1  MAYER BROWN LLP
   Matthew H. Marmolejo (SBN 242964)
2  350 South Grand Ave., 25th Floor
   Los Angeles, CA 90071-1503
3  mmarmolejo@mayerbrown.com
   Telephone:    (213) 621-9483
4  Facsimile:    (213) 576-8185

5  Alex C. Lakatos (SBN 182108)
   1999 K St. NW
6  Washington, DC 20006
   alakatos@mayerbrown.com
7  Telephone:    (202) 263-3312
8  Facsimile:    (202) 263-5312

9  *Counsel for EVC Fintech I LLC and*
   *EVC Fintech Management LLC*
10

11                      **IN THE UNITED STATES DISTRICT COURT**

12                     **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13  | IT INVEST FINANCIAL SOLUTIONS (CYPRUS), LIMITED, | Case No. 3:21-cv-8291 |
    |---|---|
14  |  | **NOTICE OF REMOVAL BY DEFENDANTS EVC FINTECH I LLC AND EVC FINTECH MANAGEMENT LLC** |
15  | Plaintiff, | |
16  | v. | |
17  | EVC FINTECH I LLC, and EVC FINTECH MANAGEMENT LLC. | |
18  | Defendants. | |

19                              **NOTICE OF REMOVAL**

20      Defendants EVC Fintech I LLC and EVC Fintech Management, LLC (together, "EVC"),

21  through undersigned counsel, remove the above-captioned action from the Superior Court for San

22  Francisco County to the United States District Court for the Northern District of California in

23  accordance with 9 U.S.C. § 205 and 28 U.S.C. §§ 1331, 1441, and 1446.

24      1.    On or about July 9, 2021, plaintiff IT Invest Financial Solutions (Cyprus) Ltd. ("ITI

25  Cyprus") commenced an arbitration against EVC before JAMS in accord with the parties'

26  arbitration agreement. On July 9, 2021, ITI Cyprus filed an arbitral complaint before JAMS in

27  which it expressly acknowledged that it was bound to arbitrate its dispute with EVC.

28

2. On September 17, 2021, while the arbitration remained pending, ITI Cyprus sued EVC Fintech I LLC and EVC Fintech Management LLC in the Superior Court for San Francisco County over the same issue pending before the JAMS arbitrator. EVC herein removes this action from the Superior Court for San Francisco County.

3. No "process, pleadings, and orders" (28 U.S.C. § 1446(a)) have been served on EVC in this action as of the time of removal.

4. Although no process, pleadings, or orders have been served on EVC in this action as of the time of removal, attached as Exhibit 1 is a copy of ITI Cyprus's complaint, the only document available from the San Francisco Superior Court clerk's office as of this removal.

5. In accordance with 28 U.S.C. §1446(d), EVC will promptly serve this notice on ITI Cyprus's counsel and file a copy with the clerk of the Superior Court for San Francisco County.

6. EVC Fintech I LLC and EVC Fintech Management LLC consent to this removal.

7. ITI Cyprus has not yet served EVC Fintech I LLC and EVC Fintech Management, LLC.

8. Under 28 U.S.C. § 1446(b) and Rule 6, Federal Rules of Civil Procedure, this removal is timely because the 30-day clock for removal has not yet begun. *See, e.g.*, *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (clock for removal not triggered by "mere receipt of the complaint unattended by any formal service").

9. The time for EVC to respond to the complaint has not yet expired.

**VENUE**

10. Under 28 U.S.C. §§ 84(a) and 1441(a) and 9 U.S.C. § 205, venue is proper in the United States District Court for the Northern District of California because this Court embraces the Superior Court for San Francisco County, where this action was pending at the time of removal.

**BRIEF OVERVIEW OF THE CASE**

11. Effective February 3, 2021, EVC acquired a block of shares of eToro, an Israeli social trading and multi-asset brokerage company that is not yet publicly traded. EVC's principal (Roman Sobachevskiy) offered ITI Cyprus's principal (Oleg Jelezko) an opportunity to

1  invest in EVC (and thereby indirectly invest in eToro, which is the only investment that EVC
2  Fintech I has made).  There was, however, one essential condition:  Jelezko was not permitted to
3  resell the interest in eToro that he was obtaining from EVC.

4      12.    To ensure there was no confusion, EVC Fintech included a very strict prohibition
5  in Section 8.8 of the operating agreement (the "Operating Agreement") signed by ITI Cyprus,
6  which reads in part: "The [EVC] Manager may, by notice to any Member, force the sale of all or
7  a portion of that Member's Interest on terms as the Manager determines to be fair and reasonable,
8  or take other action as it determines to be fair and reasonable in the event that the Manager
9  determines *or has reason to believe* that:  (i) that Member has attempted to effect a Transfer of,
10  or a Transfer has occurred with respect to, any portion of that Member's Interest."  (Emphasis
11  added.)  All of EVC's investors honored their commitment not to resell or attempt to resell their
12  interests in eToro—except for ITI.

13      13.    On or about March 4, 2021, ITI Cyprus offered interests in a $600,000 block of its
14  eToro shares for sale through its online platform.  EVC spoke with a source familiar with the
15  matter who confirmed that ITI Cyprus was offering to sell interests in a $600,000 block of eToro.
16  Then, on March 15, 2021, ITI Cyprus wrote to EVC, asking that EVC transfer a $600,000
17  interest in ITI Cyprus's eToro shares to another company, ITI Prime Investments, a Guernsey
18  company.  Based on this (and other witness testimony and/or documentary evidence), EVC
19  Manager had reason to believe that ITI Cyprus had sold or was attempting to sell its interests in
20  eToro.  Accordingly, EVC sent ITI Cyprus a notice of compulsory redemption pursuant to
21  Section 8.8 of the Operating Agreement.

22      14.    ITI Cyprus alleges that EVC breached its contract with ITI Cyprus by effectuating
23  a compulsory redemption as described above.  Though the binding arbitration agreement requires
24  an arbitrator to resolve the merits of this dispute, EVC notes that ITI Cyprus's allegations that
25  EVC breached its obligations are demonstrably false, and EVC intends to disprove them before
26  the arbitrator in the upcoming JAMS arbitration.

27      **FEDERAL-QUESTION JURISDICTION IS PROPER**
28      15.    Federal-question jurisdiction is proper under 28 U.S.C. § 1331.

16. Chapter 2 of the Federal Arbitration Act provides that "[a]n action or proceeding falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards] shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

17. Chapter 2 of the FAA abrogates the well-pleaded complaint rule and permits removal of a complaint subject to arbitration under the Convention even if the "ground for removal provided in this section [does] not appear on the face of the complaint." 9 U.S.C. § 205; *Infuturia Global Ltd. v. Sequus Pharma., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011).

18. Chapter 2 of the FAA specifies that a defendant may remove an action "[w]here the subject matter of an action or proceeding pending in a State court *relates to* an arbitration agreement . . . falling under the Convention." 9 U.S.C. § 205 (emphasis added). "The phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction." *Infuturia Global*, 631 F.3d at 1138. If an arbitration agreement under the Convention "could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Id.* (emphasis original).

19. A district court enjoys federal-question jurisdiction "under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of 'relates to.'" *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002), *cited with approval by Infuturia Global*, 631 F.3d at 1138-39 ("We agree with [*Beiser*'s] interpretation.").

20. ITI Cyrpus has already admitted that the arbitration provision in the parties' Operating Agreement requires arbitration of its claims against EVC. *See* Compl. ¶¶ 2, 7, 26 (acknowledging that the Operating Agreement requires arbitration). The arbitration provision indisputably "will impact the disposition of the case"; indeed, the parties are in the middle of a

4

JAMS arbitration. The arbitral hearing is likely to be scheduled for just a few months from now, and that arbitral hearing will resolve all of the issues raised by ITI Cyprus's complaint.

21. The FAA "embodies a clear federal policy in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). Even if any doubt were to remain about the propriety of compelling arbitration (none does), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). That presumption in favor of arbitration "applies with special force in the field of international commerce" (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)), which this dispute between a Cyprus company and an American company involves.

**THE CONVENTION ON THE RECOGNITION AND ENFORCEMENT
OF FOREIGN ARBITRAL AWARDS APPLIES IN THIS ACTION**

22. This action falls under the Convention, which provides in relevant part:

> Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. II, § 1.

23. Both Cyprus and the United States are signatories to the Convention. Chapter 2 of the FAA, 9 U.S.C. §§ 201 *et seq.*, implements the Convention for the United States.

24. This action meets all the other requirements for enforcing the Operating Agreement's arbitration provision under the Convention.

25. An action falls under the Convention if (1) an "agreement in writing" provides for arbitration, (2) the agreement provides for arbitration within the territory of a Convention signatory, (3) the agreement arises out of a commercial relationship, and (4) either a party to the agreement is not an American citizen, or the commercial relationship "has some reasonable relation with one or more foreign states." *Balen v. Holland Am. Line*, 583 F.3d 647, 654-55 (9th Cir. 2009).

26. EVC meets the requirements for compelling arbitration under the Convention.

27. First, the Operating Agreement that contains the arbitration provision is in writing.

28. Second, the Operating Agreement provides that the "place of the arbitration will be San Francisco, California." *See, e.g.*, Compl. ¶ 26. San Francisco, California is in the United States, which is a Convention signatory.

29. Third, the Operating Agreement indisputably arises out of a commercial relationship, i.e., ITI Cyprus's purchase of membership units of EVC Fintech I LLC as a derivative investment in the Israeli start-up eToro.

30. Fourth, a party to the agreement (ITI Cyprus) is not an American citizen. In addition, the relationship between ITI Cyprus and EVC "has some reasonable relation with" several foreign states, including: (1) Cyprus, where ITI Cyprus is headquartered and from where it sent the money to purchase membership units of EVC Fintech I LLC, (2) Israel, where eToro—in which ITI Cyprus sought to derivatively invest through its acquisition of EVC Fintech I LLC—is located, and (3) Guernsey, where ITI Cyrpus sought to transfer the membership units it had improperly offered for sale and apparently sold.

31. In sum, because this action "relates to" an agreement falling under the Convention, 9 U.S.C. § 203 confers federal-question jurisdiction.

## **CONCLUSION**

32. Removal is proper because this action presents a federal question under 28 U.S.C. § 1331 and 9 U.S.C. § 203.

33. If any question arises about the propriety of removal, EVC requests an opportunity to submit briefing and present oral argument in support of removal before an order resolves the question.

34. Nothing about this removal waives (or should be construed to waive) any available right, argument, defense, or objection.

35. EVC respectfully reserves the right to amend or supplement this notice.

DATED: October 25, 2021

MAYER BROWN LLP
MATTHEW H. MARMOLEJO
ALEX C. LAKATOS

By: */s/ Matthew H. Marmolejo*
      Matthew H. Marmolejo

*Counsel for EVC Fintech I LLC and EVC Fintech Management LLC*