NOSSAMAN LLP
PATRICK J. RICHARD (SBN 131046)
prichard@nossaman.com
ILSE C. SCOTT (SBN 233433)
iscott@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile:  415.398.2438

Attorneys for Plaintiff IT INVEST FINANCIAL SOLUTIONS (CYPRUS) LIMITED

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| IT INVEST FINANCIAL SOLUTIONS (CYPRUS) LIMITED, a private limited company,<br><br>Plaintiff,<br><br>vs.<br><br>EVC FINTECH I LLC, a limited liability company, and EVC FINTECH MANAGEMENT LLC, a limited liability company,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br><br>**1.  INJUNCTIVE RELIEF PURSUANT TO CODE OF CIVIL PROCEDURE §§ 1281.8 AND 525, ET SEQ.**<br><br>**2.  STAY OF ACTION PENDING FINAL RESOLUTION OF ARBITRATION** |

Plaintiff IT Invest Financial Solutions (Cyprus) Limited ("ITI") alleges as follows:

1. ITI petitions this Court *ex parte* for an order to show cause why a preliminary injunction should not issue pursuant to Code of Civil Procedure §§ 1281.8 and 525, *et seq.*

2. Pursuant to Code of Civil Procedure § 1281.8(b), ITI hereby expressly reserves its right to arbitration, and ITI has in fact exercised its right to arbitration by filing, with JAMS, a Request for Arbitration and Statement of Claims against Defendants EVC Fintech I LLC ("EVC Fintech") and EVC Fintech Management LLC ("Manager" and, together with EVC Fintech, "Defendants").  The parties' arbitration before JAMS is presently active.  A true and correct copy of ITI's Request for Arbitration and Statement of Claims dated July 9, 2021 is attached hereto as **Exhibit 1**.

3. Upon obtaining the injunctive relief requested herein, ITI also seeks an order staying this action pending full and final resolution of the JAMS arbitration.

**PARTIES**

4. ITI is a private limited company organized under the laws of the Republic of Cyprus with an office located in Nicosia, Republic of Cyprus.

5. EVC Fintech is a limited liability company organized and existing under the laws of the State of Delaware with a registered address of 16192 Coastal Highway, Lewes, Delaware 19958.

6. Manager is a limited liability company organized and existing under the laws of the State of Delaware with a registered address of 16192 Coastal Highway, Lewes, Delaware 19958.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over all parties pursuant to Code of Procedure §§ 1293 and 410.10.  Defendants are parties to the Operating Agreement and Subscription Agreement (each defined below), each of which contains a mandatory, binding arbitration clause requiring disputes arising out of these agreements to be determined by arbitration in accordance with the JAMS International Arbitration Rules, with the place of arbitration set in San Francisco, California.

8412593.v1

8. Venue is proper pursuant to Cal. Civ. Proc. Code § 1281.8(b), which provides in relevant part that "a party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending . . . an application for a provisional remedy in connection with an arbitrable controversy[.]" An active JAMS arbitration is currently pending between the parties in San Francisco, California.

## GENERAL ALLEGATIONS

9. ITI respectfully refers the Court to ITI's Statement of Claims in the JAMS arbitration (attached to this Complaint as Exhibit 1) for a full recitation of the facts relevant to this dispute. The following is a condensed summary of ITI's allegations.

10. On February 3, 2021, EVC Fintech acquired a block of 402,820 shares of eToro Group Limited ("eToro"), a rapidly growing Israeli social trading and multi-asset brokerage company. To hedge its risk, EVC Fintech invited various investors to participate in the eToro investment.

11. On or about February 8, 2021, Roman Sobachevskiy, as a principal of Defendants, solicited Oleg Jelezko, a principal of ITI, to invest in EVC Fintech. Following back and forth communications between Sobachevskiy and Jelezko, ITI agreed to make a $3 million investment in EVC Fintech, with the goal of profiting from the growth of eToro.

12. In order for ITI to obtain a financial interest in eToro, Sobachevskiy required that ITI enter into an arrangement whereby ITI would invest in EVC Fintech, and in turn ITI would receive an equity interest in the form of EVC Fintech membership units corresponding to a commensurate number of eToro shares. That is, in exchange for its $3 million investment, ITI received a membership interest in EVC Fintech corresponding to 28,828 shares in eToro.

13. On or about February 11, 2021, ITI and Defendants entered into a subscription agreement pursuant to which ITI agreed to invest $3 million in exchange for its investment in EVC Fintech (the "Subscription Agreement").

14. On or about February 11, 2021, ITI and Defendants entered into an operating agreement that governed the terms of operation of EVC Fintech (the "Operating Agreement").

15. EVC Fintech is managed and operated by Manager.

8412593.v1

16. Upon ITI making its $3 million investment and the parties' execution of the foregoing agreements, ITI received a "Membership Certificate" evidencing its purchase of 28,828 units of EVC Fintech and corresponding 28,828 eToro shares.

17. On March 16, 2021, eToro announced it would go public via a merger with special purpose acquisition company ("SPAC") at a valuation of $10.4 billion. ITI anticipated that the proposed merger between eToro and the SPAC would significantly increase the value of ITI's interest in EVC Fintech and corresponding eToro shares.

18. Upon the announcement of the SPAC merger, the risk of the eToro investment was essentially eliminated, and a massive profit became inevitable.

19. Two weeks later, on March 29, 2021, counsel for Manager sent ITI a letter contending that ITI violated the "Compulsory Redemption" clause in the Operating Agreement. The letter purported to rescind ITI's interests in EVC Fintech "effective immediately."

20. In the letter of March 29, 2021, Manager baselessly alleged that ITI violated the Operating Agreement by attempting to sell its interest in EVC Fintech. However, Manager did not provide any facts in support of this assertion. Moreover, Manager failed to detail any basis that indicated ITI violated any other provision of the Operating Agreement.

21. In the letter of March 29, 2021, Manager further purported to redeem ITI's interests in EVC Fintech at "cost," *i.e.*, for a price of approximately $3 million, which is the price ITI paid in order to acquire ITI's interest in EVC Fintech.

22. Manager's attempt to force ITI to redeem its membership interest at "cost" flew in the face of the Operating Agreement's Compulsory Redemption clause, which, to the extent that clause was applicable, requires that any redemption of membership interests must take place on "fair and reasonable" terms. ITI's membership interest in EVC Fintech became exponentially more valuable once eToro announced its anticipated SPAC merger and public listing.

23. In subsequent communications between the parties, and despite ITI's repeated requests, Defendants have neither identified nor furnished evidence supporting any basis for asserting that ITI breached the Operating Agreement.

24. ITI has not breached the Operating Agreement or the Subscription Agreement. At

- 4 -
COMPLAINT

8412593.v1

1  all times, ITI has acted in accordance with its duties and obligations under the Operating

2  Agreement and Subscription Agreement.

3      25. In bad faith, Respondents brazenly attempted to rescind ITI's investment so

4  Respondents could enrich themselves at ITI's expense by falsely alleging a pretextual breach by

5  ITI, thereby attempting to steal ITI's profits from its eToro investment.

6      26. On July 9, 2021, ITI commenced an arbitration proceeding against Defendants

7  under Section 14.9 of the Operating Agreement and Section 17 of the Subscription Agreement.

8  Each of these clauses provides that any dispute arising from or related to the Operating

9  Agreement or Subscription Agreement is to be determined in an arbitration administered by

10 JAMS, with the place of arbitration set in San Francisco, California.

11     27. On July 27, 2021, ITI's counsel reached out to Defendants' counsel and requested

12 that Defendants voluntarily agree not to transfer or otherwise dispose of ITI's 28,828 eToro

13 shares pending the resolution of the JAMS arbitration.  However, Defendants declined ITI's

14 request.

15     28. Defendants' transfer or disposition of ITI's 28,828 eToro shares would frustrate

16 the entire purpose ITI's acquisition of the membership interest in EVC Fintech in the first place,

17 namely, to enable ITI to hold onto its eToro shares until eToro becomes publicly traded and

18 beyond.

19     29. EVC Fintech is a single-asset entity that controls only one asset: shares of eToro it

20 controls for the benefit of EVC Fintech's unit holders, including ITI.  As soon as EVC Fintech

21 distributes those shares, EVC Fintech will hold no other assets.  In other words, once EVC

22 Fintech distributes the eToro shares, EVC Fintech will become "judgment proof" and be unable

23 to satisfy any judgment or arbitration award won by ITI in the JAMS arbitration.

24     30. Section 14.10 of the Operating Agreement sets forth available remedies and

25 permits a non-breaching party to seek injunctive relief against the breaching party to enforce the

26 terms of the Operating Agreement.  That clause provides:

27         In the event of any actual or prospective breach or default of this
        Agreement by any Party, the other parties will be entitled to seek
28

8412593.v1

equitable relief, including remedies in the nature of injunction and specific performance (without being required to post a bond or other security or to establish any actual damages). In this regard, the Parties acknowledge that they will be irreparably damaged in the event this Agreement is not specifically enforced, since (among other things) the Interests are not readily marketable. All remedies under this Agreement are cumulative and not exclusive, may be exercised concurrently and nothing in this Agreement will be deemed to prohibit or limit any Party from pursuing any other remedy or relief available at law or in equity for any actual or prospective breach or default, including the recovery of damages.

31. Accordingly, ITI filed the above-captioned action seeking an order for a preliminary injunction in aid of arbitration against Defendants in order to preserve the status quo by enjoining Defendants from transferring or otherwise disposing of ITI's 28,828 eToro shares pending full and final resolution of the JAMS arbitration.

32. Additionally, ITI seeks a stay of this action pending full and final resolution of the JAMS arbitration.

### FIRST CAUSE OF ACTION

**(Injunction Pursuant to Code of Civil Procedure §§ 1281.8(b) and 525, *et seq.*)**

**(Against All Defendants)**

33. ITI realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 32 of the Complaint with the same force and effect as if fully set forth herein.

34. ITI is likely to prevail on the merits of its claims for breach of contract and declaratory relief against Defendants in the JAMS arbitration.

35. ITI has complied with its obligations under the Operating Agreement and Subscription Agreement.

36. Defendants breached the Operating Agreement by baselessly purporting to redeem ITI's membership interest, while failing and refusing to identify either the facts or evidence supporting Defendants' position.

37. Defendants further breached the Operating Agreement by seeking in bad faith to redeem ITI's membership interest in EVC Fintech for "cost" (*i.e.*, $3 million) even though

eToro's announcement that it will be going public as part of a $10.4 billion deal exponentially increased the value of ITI's 28,828 eToro shares and, accordingly, ITI's commensurate membership interest in EVC Fintech.

38. ITI will suffer irreparable harm if Defendants are not enjoined from transferring or disposing of ITI's 28,828 eToro shares.

39. EVC Fintech is a single-asset entity that only owns shares of eToro and no other assets. If permitted to distribute the eToro shares, EVC Fintech will become "judgment proof" and be unable to satisfy any judgment or arbitration award obtained by ITI in the JAMS arbitration.

40. The monetary value of ITI's eToro shares and membership interest in EVC Fintech cannot be easily ascertained at this time. As such, ITI will suffer irreparable harm if Defendants are able to transfer or dispose of ITI's eToro shares.

41. The parties expressly acknowledged in the Operating Agreement that the non-breaching party "will be irreparably damaged in the event this Agreement is not specifically enforced, since (among other things) the Interests [*i.e.*, ITI's interest in EVC Fintech] are not readily marketable."

42. The balance of the equities weighs heavily in favor of ITI, as ITI simply seeks to preserve the status quo until the JAMS arbitration is fully adjudicated and ITI is prepared to complete the arbitration quickly.

43. If the injunctive relief requested herein is granted and Defendants prevail in the JAMS arbitration, Defendants will still have the benefit of owning ITI's eToro shares and the ability to transfer, sell, or dispose of those eToro shares as Defendants see fit.

44. On the other hand, if the injunctive relief requested herein is not granted (and therefore Defendants are permitted to transfer or dispose of ITI's eToro shares) and ITI prevails in the JAMS arbitration, then ITI will lose the entire benefit and purpose of its investment in EVC Fintech, which was to acquire and own an interest in eToro.

45. To prevent irreparable injury to ITI before the arbitrator resolves the parties' dispute, preliminary injunctive relief is necessary and appropriate.

46. WHEREFORE, ITI prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(Stay of Action Pending Resolution of JAMS Arbitration)**

**(Against All Defendants)**

47. ITI realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 46 of the Complaint with the same force and effect as if fully set forth herein.

48. At present, ITI and Defendants are parties to an active JAMS arbitration.

49. ITI brings the above-captioned action pursuant to Code of Civil Procedure §§ 1281.8 and 525 seeking an order granting a preliminary injunction in aid of the JAMS arbitration.

50. In order to preserve judicial resources and avoid inconsistent outcomes and duplication of costs, the above-captioned action should be stayed pending full and final resolution of the JAMS arbitration.

WHEREFORE, ITI prays for relief as hereinafter set forth:

1. A preliminary injunction in aid of the Arbitration prohibiting Defendants from offering, pledging, selling, contracting to sell, selling any option, or otherwise transferring, encumbering, or disposing of any interest in or to ITI's 28,828 units of EVC Fintech;

2. A preliminary injunction in aid of the Arbitration prohibiting Defendants from offering, pledging, selling, contracting to sell, selling any option, or otherwise transferring, encumbering, or disposing of any interest in or to ITI's corresponding 28,828 eToro shares;

3. An order staying this action pending the outcome of the JAMS arbitration; and

4. Granting such other and further relief in ITI's favor as the Court deems just and proper.

In addition, upon entry of the preliminary injunction, ITI requests that the Court enter an order staying this action pending the conclusion of the JAMS arbitration.

Dated:  September 17, 2021

NOSSAMAN LLP
PATRICK J. RICHARD
ILSE C. SCOTT

By: _____
Patrick J. Richard
Ilse Scott
Attorneys for Plaintiff IT INVEST FINANCIAL SOLUTIONS (CYPRUS) LIMITED